This is our case number 4-25-0083 and 4-25-0084. People in the state of Illinois v. Meckitt v. Verner. I ask counsel for the appellant, please state your name. Madeline Springer. Thank you, counsel. Counsel for the appellee, please state your name, sir. James Ryan Williams. Thank you, counsel. At this time, Ms. Springer, on behalf of the defendant, you may begin your oral argument. Thank you. May it please the court. My name is Madeline Springer and I represent Mr. Mark v. Verner. May I please reserve three minutes for rebuttal? You get it automatically, you get five. Perfect. Thank you. In Mr. Verner's case, the law required the state to exercise due diligence to bring him to trial within 120 days. The law required the court to make an independent determination of his fitness. And the law required his 12-year sentence to reflect a balance between retribution and rehabilitation. But none of that happened. Today I'll address each of those three errors in that order, but welcome any questions the court may have. In DNA cases, there are things that are outside of the state's control. They're at the mercy of science and technology, but one thing that is entirely within their control is making sure that it gets the lab the materials it needs to complete testing as soon as it can. And that's exactly what the state didn't do here. This case isn't about a lab delay. It's about the state's inaction. Under the Speedy Trial Act, the court can grant the state additional time beyond the 120-day speedy trial period to get results from DNA testing, but only if the state shows that it exercised due diligence on the record and that it still wasn't able to get results in time. Due diligence looks to what a reasonable prosecutor who's actually trying to get results within that 120-day period would do. And the burden is on the state to make that showing on the record. But it didn't. And so the trial court abused its discretion when it granted the extension. And two critical legal experts here show why. What's the standard review for us regarding the determination by the trial court to grant this extra time? It's an abuse of discretion. So that means that we have to conclude that the trial court's decision was unreasonable, essentially that no reasonable person would have adopted the view taken by the trial court? Yes, Your Honor. Also, with regard to this, I noticed in your brief, you cite repeatedly in the Battles case, I believe that was the Fifth District, suggesting that this is something we ought to follow, where the Battles case and the Third District case followed it. So there's a delineated series of steps that a prosecutor must take. But in your briefs, you don't point out that this court and people being Colson, that you cite, but you don't mention that we specifically rejected this analysis in Battles. And the quote here from Colson, we declined to follow the Fifth District's holding in Battles to the extent that it imposes a delineated series of steps that a prosecutor must go through before getting continuance for DNA testing. We choose to stick with the established rule also stated in Battles, that due diligence is to be determined on a case-by-case basis. So to agree with your argument, are we going to have to overrule what we said in Colson and adopt the Battles analysis? No, Your Honor. It's a case-by-case basis. When we look at it, we still see that the state did not act reasonably as is required under Colson. It's actually our position that Colson is supportive here. It demonstrates that what happened here was not due diligence. Because first, the state waited 38 days, which is five and a half weeks after Mr. Verner was taken into custody, before sending swabs from the firearm to the lab. And the only reason that it would do that would be to make sure that it had DNA on the firearm to try to connect it to Mr. Verner's DNA. But then that second and even worse delay is that it waited 95 days, which is 13 and a half weeks before it even asked Mr. Verner for a DNA sample. There was no reasonable reason for it to wait over three quarters of that speedy trial term before it even asked for one of the basic materials it needed to complete testing. That is not due diligence. That's inaction. And in Colson, the state provided all of the materials, all the evidence that the lab needed to complete testing within about six weeks. And even then, this court stated that the state could have perhaps done better. Here, the court noted, or the court waited twice that time, 13 and a half weeks, before it even requested, again, the basic materials it would need to complete testing. All of this was known to the trial court and argued to the trial court, wasn't that? It was. So where did the trial court go wrong, in your opinion, in its assessment that the state's delay was appropriate? Because the state still, the court has to find that the state exercised due diligence. What a reasonable prosecutor intent on completing testing, they would not wait 13 and a half weeks to even request Mr. Verner's DNA sample. A reasonable prosecutor knows that there's going to be delays, that the lab, again, takes time, that they're at the mercy of science and technology. So they would not wait 13 and a half weeks before they asked Mr. Verner for his DNA sample. That is not due diligence. That's the difference. Under Polson, this is not due diligence. Under Polson, this court stated that due diligence does not mean perfect diligence, and we noted, think that the trial court was in the best position to determine whether the state's efforts were reasonable under the circumstances. Why weren't they here? Because it doesn't require perfect diligence, but it requires reasonable diligence. And again, a reasonable prosecutor won't wait 13 and a half weeks to request the materials it needs to complete testing, especially when from the onset of the case, they knew that they wanted to have that DNA from the beginning. It's not about whether or not at some point the state started to exercise due diligence. They needed to exercise it throughout the entire time. And whenever the state requested it, the trial court had to put on their record its reasoning then for taking this long, and it didn't. That's why this is an abuse of discretion. That's why the trial court needed to have reasons from the state about why it waited this long and it didn't. Not a series of delineated steps, but just some sort of reason why it waited that is in line with what a reasonable prosecutor would do, and it didn't. So this court abused its discretion when it granted that extension on January 12, 2023. And then Mr. Verner was then tried well outside of that 120-day term. And that's all he needed to show to be able to be entitled to discharge. But counsel didn't preserve that violation, but that constitutes ineffective assistance. Counsel did 98% of the job. He demanded trial from the beginning. He challenged due diligence. He objected at every continuance before and after the improper extension and after the speedy trial term had already run out, but failed to take that one final step that would have actually given Mr. Verner relief, and that's to move to discharge and preserve the issue in a post-trial motion. That's not trial strategy. That is deficient performance. And prejudice is straightforward. There is a reasonable probability Mr. Verner would have been discharged had counsel filed that motion and preserved the error. This isn't about what the trial court in this specific case, if he would have changed his mind. It's about whether or not that motion would have been meritorious. And here it would be for all of the reasons we already just discussed. Had counsel performed reasonably, Mr. Verner would have been discharged, which means this court should reverse his armed habitual criminal conviction. Turning to that second issue, the retrospective fitness hearing. The trial court failed to make an independent determination of fitness based on the totality of the circumstances. It couldn't. It didn't remember the original proceedings. It didn't ask Mr. Verner, counsel, the state, any questions. And it was left to rely exclusively on the expert's unsupported opinion. Defense counsel observed Mr. Verner for months and then before raising a reasonable doubt or raising a bona fide doubt of his fitness, which then the chief public defender came on the record to echo. There was an evaluation and the expert found that Mr. Verner suffered from auditory hallucinations, but still found him fit. Then the trial court just accepted that conclusion by stipulation. This court then remained for a retrospective fitness hearing because the trial court never made that determination, that independent determination the law requires in the first place. And it still hasn't. The court gave a generic explanation for finding Mr. Verner fit that showed that it didn't remember the case. It referenced a plea that never happened, but there were two entire trials that the court obviously didn't remember. And even after being corrected, it then said that fitness occurred at sentencing. That was still wrong. It occurred well before both trials and no one corrected it that second time. And that matters because it shows that the court didn't remember Mr. Verner's behavior before trial, which is the very behavior that led to that bona fide doubt in the first place. Behavior that the court personally observed. Behavior like Mr. Verner wearing a protective smock his entire time in custody and at every single court hearing. The fact that he heard voices in his head of people trying to hurt him and acted accordingly, afraid of- Well, if I may, just going back to the protective smock that you mentioned, would the fact that he's wearing that preclude a finding of fitness? No, it's just it shows that there are concerns, that there were serious concerns that the court had at that time that it didn't remember and weren't factored into its determination of the retrospective hearing. And even if a defendant were suffering from a mental health condition, that doesn't necessarily render him fit to- or unfit to stand trial, correct? It doesn't. But what the issue here is that there was never an independent determination to begin with. We're not trying to say that we, you know, that the record is objectively clear that he isn't unfit, that he is unfit. It's just that that determination has never been made in accordance with what the law requires. Well, let me ask you about that, counsel. I'm not sure I understand what you mean. You- the court heard testimony from an expert witness in this regard, did it not? It did. On the question of defendant's fitness? It did. You seem to argue that the expert's conclusion are poorly reasoned and contradicted by the record, but you don't identify exactly why that was the case. What was poorly reasoned or contrary to the record based on the expert's opinion? Well, it was based on one call, which, as this court has explained in Gillian, is concerning when the fact that a defendant may appear stable in a controlled evaluation, but not in the adversarial environment of a courtroom. But more so, it relied on two sources, Mr. Verner and the mental health staff at the jail. But then its report, after listing those as the two sources, later goes on to say the mental health staff at the jail did not know Mr. Verner. And that's concerning because, again, he wore that protective smock his entire time there. So in reality, the opinion relied largely on what Mr. Verner said about himself. For example, the expert testified that it found that he had no mental health history because Mr. Verner didn't acknowledge one at the time, but a defendant can't decide its own fitness. Courts have said that entirely circumvents the fitness inquiry. And again, we're not asking for the expert to manufacture mental health records. We're saying that this wasn't a reliable source when it's one source for the court to base its entire opinion on. So were there outstanding mental health records somewhere that you believe were not considered? No, but that, again... And like the jail staff, the mental health staff at the jail not knowing him, doesn't that allow the court to make the inference then that he was not suffering from mental illness? No, it doesn't. Why would that be precluded? Because there are all of these concerns again. And the fact that they did not know him should be concerning because he was wearing a protective smock. But I guess my question is, can't that inference cut both ways? I don't believe so, Your Honor. He was in jail for a few months and the fact that they didn't know him, I don't think that the mental health at the jail has the time or capacity to make sure everyone was not affected. He reported hearing voices in his head since 2015. And the expert dismissed Mr. Renner's auditory... The expert did consider that, correct? He did consider that. But he dismissed because they were grounded in reality. The expert found that they were grounded in reality based on living in a dangerous area. And that misses the point. The question is whether they impair his ability to communicate with counsel and assist his own defense. And she explicitly said that she expected that he would be able to do that because he could rationally communicate with his attorney for the purpose or that he expected to do that because he could rationally communicate during this interview. And we look back to, again, Gillian says, it explains this perfectly. It says that in this one controlled environment, someone's paranoia might not show up. And that's the problem. Fitness can't be delegated to the expert. It has to be determined by the court and only the court because it has to be based on the totality of the circumstances. And that's because... You keep making that point, but it's almost as if you're arguing the court is supposed to decide this based upon observing the defendant. Isn't the court supposed to be deciding this based upon the evidence presented at the hearing? No, it is on the court. The court needs to consider the record, to consider its own personal observations. And again, if it doesn't remember, it could have asked defense counsel, Mr. Verner, the state, anyone who was there. That is the key to the law because mental illness can affect people in different ways at different times. And one of the concerns of a retrospective fitness hearing is that people won't remember the personal observations that they had before. And that's exactly what happened here. So the court needed to look through the record and defense counsel wasn't effective for treating this like... Actually, the defense counsel and the court treated this retrospective fitness hearing like a formality. The court said they were there to simply clean up a fitness issue. And defense counsel said, Mr. Verner is really more concerned with getting back to an appeal. But defense counsel's job in that fitness hearing was not to advocate for what Mr. Verner wanted. It was to make sure that there's a fair fitness determination. You've also spoke of how the expert, Dr. Lohr, apparently was relying upon discussions with the Stevenson County jail people. But in fact, she examined the defendant personally herself. Did she not? She did. Why isn't her examination worthy of belief by the court when she testifies as an expert that in open court, not by stipulation, that he's fit? Because the court can't just base that. That would be again delegating... Because the court asked no questions, that'd be delegating the determination to the expert. And that is what the law has clearly said cannot happen. Well, no, the law says you can't accept the stipulation. When an expert testifies in open court and renders an opinion, and there was no contrary evidence on the point, and there's nothing inherently unbelievable about this expert opinion, your position is that's not an acceptable basis for the trial court to conclude that he's fit? Because there is contrary evidence on the record. It wasn't introduced at the retrospective... I didn't say contrary evidence. There's nothing unbelievable about her report, is there? I think that there is. I think that dismissing... So just on its face, not worthy of belief, is that right? It's not a reliable substitute for the court's own independent judgment. No, the court's own personal observations... Well, counsel, you're talking to three people who prior to getting on this wonderful job, all had real work as trial judges, as I like to put it. And I think we've all been involved in this. And it's nice that you think so highly of trial judges, but on what basis are trial judges supposed to be deciding these kinds of issues and decide someone is fit, and we're gonna disregard what the expert who's actually examined this person and has an opinion about fitness thinks? Is that what you're saying? Yeah, the law says that the court has to be the one to make this determination. This is different than, let's say, a medical malpractice case, where the court is the trier of fact. And we hear from a doctor who expresses an opinion that the defendant, in fact, disregarded acceptable standards of medical care. And is that for the trial court to decide? Do I accept that or believe it? Or is the trial court able to accept that expert testimony, especially if it's not contradicted? I think I see that my time is pretty much up.  No, absolutely. This is different. It makes for you to respond. This is different. This is a constitutional... The Constitution bars the state from prosecuting a defendant if they're... Okay, so wait a minute. This is an evidentiary issue first. We're talking about, as a matter of evidence, is the trial judge supposed to be making this determination independently of the expert witness? Is that what you're suggesting? It can consider it. It cannot rely exclusively on it. Well, what other evidence is this court supposed to rely upon? It's on personal observations of the defendant. So I'm sitting there as a trial judge watching this guy in my courtroom. And depending upon how he behaves in the courtroom, I can overrule the expert's testimony based upon her examination and her expertise. Is that right? Yes. What case says that? All of them. Gibson is one that this court actually also, in remanding for a retrospective fitness hearing, said that it needs to follow Gibson. Gibson said that because also that trial judge, one of the issues there was because that trial judge, this is the first time overseeing that defendant because it wasn't in charge of the previous trial. It should have asked questions. It should have asked defense counsel questions. It should have asked the defendant himself questions. Well, this is premised upon the Supreme Court's decision, the trial courts err by accepting a stipulation as to the fitness of a defendant. What case says that when a trial court has not accepted a stipulation and made its own finding based on evidence presented, that's not good enough? I think it is Gibson that says that there must be personal observations. I can have that case for you. No, that's okay. It's as much a rhetorical question, I suppose, as that. Thank you for your argument. You have an opportunity to address us in rebuttal. This time then, Mr. Williams, you may argue on behalf of the state. Thank you, Your Honor. May it please the court. My name is James Ryan Williams, and it is my privilege to represent the state before this honorable court. In this case, the state's requesting that this court affirm the defendant's convictions for armed habitual criminal and aggravated battery of a correctional officer, as well as his concurrent 12-year and five-year sentences. With respect to the speedy trial argument, defendant claims that trial counsel was ineffective for failing to file a motion to dismiss on speedy trial grounds. As an initial matter, contrary to what was briefed and what counsel just said, defense counsel in this case did not answer ready from the very onset of this case. At the October 13, 2022, preliminary hearing, he simply requested a jury trial. At the next hearing on December 8, 2022, he merely indicated that they would be in a position to answer ready, so didn't even actually answer ready. Of course, even if he did, quote, answer ready, that is not enough to be a speedy trial demand. So ultimately, it was not even until January 12, 2023, that counsel first referenced the speedy trial. Now, regarding the due diligence issue, contrary to the defendant's claim, the state did exercise due diligence in obtaining the DNA test results in this case. Defendant initially complains about the one-month delay between the assistant state's attorney requesting analysis and the gun actually being swabbed. However, counsel did not complain of this delay in court or argue that it was excessive and thereby deprive the state of any opportunity to provide a reason on the record. And they've therefore forfeited that issue. Defendant also complains that the state did not request his DNA until approximately two months after the gun swab. However, that is because the lab had to see if there was even a DNA profile on the gun and it was represented that that could take up to four months and here it only took two. And in fact, the timeline here is actually very similar to the case discussed earlier, People v. Colson, where this court found that the state exercised due diligence in obtaining the DNA test results. And although the delay here was approximately a month longer, it included additional steps such as identifying whether there was a sample that was suitable. And then of course, the two-week delay occasioned by the defendant's refusal to provide his DNA. Regarding the retrospective fitness hearing and defendant's original appeal, the state conceded that a new retrospective fitness hearing was necessary because the trial court had previously relied on the party's stipulation rather than making an independent judicial finding of fitness. Now on appeal, defendant complains that the trial court's factual finding was just a rubber stamp of the expert's opinion. However, the trial court here- So if I can interrupt you there, I think we do need to clarify a little bit what appellate counsel is arguing. And do you agree that the court in making its determination can consider all the information before it, meaning its personal observations that day of the defendant or the record, as well as the information provided for the expert? As far as I can tell, the court is to make the determination based on all the evidence presented. And here we have a full hearing. The court considered live testimony and made an independent judicial determination based on the evidence. And that evidence included the testimony of Dr. Lohr, I assume I'm saying that correctly, a clinical psychologist who testified regarding her evaluation of defendant. She discussed his orientation to time and place, his understanding of the charges, and his ability to process information. She testified that he denied having any prior mental health history. So of course there would then be no mental health history to review. And she noted that jail staff reported that the defendant was not known to them to have mental health issues. And she explained that the self-reported auditory hallucinations were perhaps rooted in the realities of living in a dangerous community, and they were not illegally incapacitating break from reality. So based on this testimony, the reports and other evidence, the trial court explicitly stated that it was making an independent finding that the defendant was fit at the time of trial and sentencing. And this demonstrates that the finding was not simply a rubber stamp of the expert's opinion. Now, if I understood opposing counsel's argument, she indicated that the court had some obligation to inquire of defense counsel about the defendant's mental health. How do you respond to that? Honestly, I don't recall that actually being argued. And if the argument there is that the court has a sua sponte duty to inquire of defense counsel of defense counsel's position. I mean, I'm not familiar with case law requiring that. But it seems to me that the main thing that the defendant is focused on here is the simple misstatement by the judge of the plea versus the trial, which notably was immediately corrected on the record. So ultimately, it's the state's position that the trial court conducted a proper retrospective fitness hearing here, heard uncontradicted live testimony, and made a independent judicial determination of fitness that was not against the manifest weight of the evidence. Counsel also mentioned that part of her challenge to this is that the court mentioned that fitness was brought up at the sentencing. And she suggests, no, this was an issue throughout the case. How do you address that point? Could you restate your question? I didn't follow you. I think the statement, not only was it plea versus trial, but it was also the court's statement that fitness became an issue at sentencing. And her statement was that fitness had been raised prior to sentencing also or fitness issues. Unfortunately, Your Honor, I honestly do not remember the timing or the sequence of the events in that respect. So I can't really offer an opinion on point. Thank you. Are there any other questions, Your Honor? All right, thank you. I appreciate your time. And we respectfully ask that you affirm defendant's convictions. Okay, thank you, counsel. Ms. Springer, on behalf of the appellant, you may continue with your argument. But I did want to follow up on one thing. To what extent, when the court is deciding the question of fitness, are the remarks of the attorneys, primarily the defense attorney, but as well as the prosecutor, appropriate for consideration when they're just being offered no incentive to vote? No one's testifying here about that. How does that work in your opinion? I apologize. I think I missed the last part of your question. How should the trial court view the representations or remarks of defense counsel or even the prosecutor with regard to their views or opinions about how the defendant acts or is behaving in court or otherwise on the question of whether the defendant is fit? After all, we've had testimony from the expert under oath subject to cross-examination. But remarks of counsel are neither under oath nor subject to cross-examination. So how does that work? It would be just one part that the court should consider because the court needs to consider the totality of the circumstances. So not just one interview call, not just the state's attorney's assertion about what happened. It needs to consider everything, everything it can about his fitness because it is a constitutional issue. Well, what's interesting about it is I can't think of any other instance. Maybe my distinguished colleagues where the court is called upon to make a finding of fact based upon matters that's not testimony under oath or subject to cross-examination, just representations by lawyers. Can you think of any counsel? The only thing I could think of has been Crankle and Curry talking about talking to defense counsel. But to focus, I wanna highlight a few points on rebuttal. To be clear, when we're talking about the fitness issue, it's the fact that these multiple things come into play, that he didn't remember, that he didn't ask questions and that this particular expert- When you talk about him not remembering, your reference, your support for that assertion is the confusion between plea and trial, correct? Correct, but- And that was immediately corrected on the record. Correct. And then the court kept restating the facts. Sorry, I apologize, Your Honor. And then in the next statement being with regards to the sentencing? Yes, that fitness, that they stipulated a fitness at sentencing. Okay. And as far as the stipulation to fitness, that occurred when? Well, before both on April 19th. Well, before both trials. But does that establish, I guess, even the court misstating that fact, I guess my question is, how does that necessarily establish that this court had no independent recollection whatsoever about the underlying basis of the defendant's behavior? Because- If it's a misstatement of timing. Because even where the courts have assessed that even the fact that they're making an independent determination has to be clear from the record. If it's not clear from the record, they still could have- He stated he did though. That's one conclusion. It has to, so one of the cases in Contro, the trial court may have made an independent determination of fitness, but that record did not affirmatively show that. His conclusion that he made the statement when also he's saying that they're just there to clean up this fitness issue again, Mr. Verner has never had an actual independent determination by the court that the law requires. The court accepted by stipulation- Part of your argument as to that, doesn't that really go to the weight you believe the court should have given this witness because of what you deem to be the challenges to the sources she based her opinion upon? It would be to the weight, but that was the only source of information the court had. Because it didn't remember and because nobody else spoke about it, that's the only source. But I guess that's what I'm asking you. What else in the record other than this reference to the timing of when fitness was stipulated to suggest the court had no recollection whatsoever of the defendant behaviors occurring previously? It goes to the fact that the record has to show. If it's missing, that matters. The court has said- But I guess I'm not making the connection, you are counsel, and that's why I'd like you to help me understand that is the mere fact the court, if I take you at your word, misstated when the stipulation occurred. I don't know that that is a guaranteed inference that the court has no recollection of this defendant. And that's what I would like you to help me draw that, those two dots, so that I can say this record doesn't support the court's independent finding. Your Honor, it said it thought this fitness arose at sentencing, but because it arose, and the fact that it didn't remember that there were two trials, and then it thought fitness arose at sentencing. Couldn't that statement have just been him misspeaking? For the second time, and then again, the record is absent of any facts that he never once gave a fact or offered anything about what happened in the original proceedings. Only this conclusory statement that this is what the expert found. So because the laws required the record to show that there was an independent determination, not that there could have been, that's what matters. Counsel, your time is up, and I want to ask you about the sentencing question, because the defendant was convicted of being an armed habitual criminal. And I want to make sure I understand, are you arguing to this court that in part, the reason that the trial court imposed, in your view, an excessive sentence is because the defendant used his weapon, arguably for self-defense? I'm sorry, can you restate the question really quickly? Yes, well, you seem to be arguing that the defendant's sentence was excessive in part because of a claim that he used the weapon in self-defense. Do I understand that correctly? Yes, Your Honor. The record shows that he was using the weapon in self-defense, and the record also shows that the court considered the fact that he shot the weapon towards people in aggravation. But if those facts, if you consider those facts an aggravation, it should have to consider the context that he was firing that gun in self-defense. Someone shot it first, because that's a mandatorily required statutory... No, he's not permitted to possess a weapon in the first place. He can't have the gun that he is arguably using in self-defense. It doesn't matter, does it? He just can't have a gun, and it's an aggravating factor that the gun he's not legally to possess, he fired. Because it is then, if the court is considering those uncharged circumstances that he fired the gun towards somebody, then it should have to consider the substantial... What do you mean uncharged circumstances? Wasn't that the testimony of trial? Yes, Your Honor, but they never charged him with anything about shooting the gun, only possession because self-defense. Does that matter for purposes of the trial, court, and sentencing here? Was he charged with it? The court can consider it, but then it also has to consider the substantial grounds that tend to justify that conduct. Why? Because it's listed as a statutorily required mitigating factor. So the criminal is not permitted to possess a gun, is permitted to use the gun, he's not entitled to possess in self-defense, and that's mitigating? It is when you consider the grounds, yes. That is a required mitigating factor. Thank you for your argument, counsel. Your time is up. The court will take this matter under advisement and run their decision in due course.